[No. S162313. Jan. 14, 2010.]

ROBERT CHAVEZ, Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

972

974

COUNSEL

Law Office of Rochelle Evans Jackson, Rochelle Evans Jackson; Law Office of Melinda G. Wilson and Melinda G. Wilson for Plaintiff and Appellant.

Lisa R. Jaskol for Los Angeles County Bar Association and California Women Lawyers as Amici Curiae on behalf of Plaintiff and Appellant.

Horvitz & Levy, Jeremy B. Rosen and Jason R. Litt for The Asian Pacific American Legal Center, Bet Tzedek Legal Services, The Impact Fund, Public Counsel and The Western Center on Law and Poverty as Amici Curiae on behalf of Plaintiff and Appellant.

Rockard J. Delgadillo, City Attorney, Paul L. Winnemore and Beth D. Orellana, Deputy City Attorneys, for Defendants and Respondents.

Paul, Hastings, Janofsky & Walker, Paul W. Cane, Jr., and Laura B. Scher for Employers Group and California Employment Law Council as Amici Curiae on behalf of Defendants and Respondents.

Lozano Smith, Gregory A. Wedner and Sloan R. Simmons for League of California Cities and California State Association of Counties as Amici Curiae on behalf of Defendants and Respondents.

Norton, Moore & Adams and William A. Adams for Food & Beverage Association of San Diego County as Amicus Curiae on behalf of Defendants and Respondents.

The Hundley Law Firm and Paul B. Hundley for Association of Corporate Counsel, Southern California Chapter as Amicus Curiae.

OPINION

KENNARD, J.—"Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (Code Civ. Proc., § 1032, subd. (b).) The litigation costs that the prevailing party may recover include attorney fees when recovery of such fees is authorized by statute. (*Id.*, § 1033.5, subd. (a)(10)(B).) But when "the prevailing party recovers a judgment that could have been rendered in a limited civil case,"[1] and the action was not brought as a limited civil case,

---

[1] Generally speaking, a limited civil case is one that, before the unification of the municipal and superior courts, would have been within the jurisdiction of a municipal court. Actions that

Code of Civil Procedure section 1033's subdivision (a) (hereafter section 1033(a)) states that "[c]osts or any portion of claimed costs shall be as determined by the court in its discretion . . . ."

In any action brought under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), Government Code section 12965's subdivision (b) grants the trial court discretion to award attorney fees to a prevailing party. This statute has been interpreted to mean that in a FEHA action a trial court should ordinarily award attorney fees to a prevailing plaintiff unless special circumstances would render a fee award unjust. (*Young v. Exxon Mobil Corp.* (2008) 168 Cal.App.4th 1467, 1474 [86 Cal.Rptr.3d 507]; *Steele v. Jensen Instrument Co.* (1997) 59 Cal.App.4th 326, 331 [69 Cal.Rptr.2d 135].) If, as here, a party brings an action under the FEHA that is not brought as a limited civil case and recovers an amount that could have been awarded in a limited civil case, does the trial court have discretion under section 1033(a) to deny that party's motion for attorney fees?

Here, the plaintiff brought an action under the FEHA and recovered damages of $11,500, which is less than half of the $25,000 jurisdictional limit for a limited civil case (see Code Civ. Proc., § 86). Plaintiff did not bring the action as a limited civil case, and the trial court, relying on section 1033(a), denied plaintiff's motion seeking an attorney fee award of $870,935.50. On plaintiff's appeal, the Court of Appeal reversed, concluding that "section 1033 does not apply in actions brought under FEHA."

We have determined that the Court of Appeal erred in so concluding and that its judgment should therefore be reversed. As we explain, section 1033(a), interpreted according to its plain meaning, gives a trial court discretion to deny attorney fees to a plaintiff who prevails on a FEHA claim but recovers an amount that could have been recovered in a limited civil case. In exercising that discretion, however, the trial court must give due consideration to the policies and objectives of the FEHA in general and of its attorney fee provision in particular. Here, we further conclude that, in light of plaintiff's minimal success and grossly inflated attorney fee request, the trial court did not abuse its discretion in denying attorney fees.

## I

The appellate record in this case does not include reporters' transcripts of trial proceedings. Instead, it includes documents filed in the action and a

---

may be brought as limited civil cases include those in which the amount in controversy does not exceed $25,000. (See Code Civ. Proc., §§ 85–86.) Limited civil cases are subject to certain procedural restrictions intended to control the cost of litigation. (See *id.*, §§ 92–98.)

reporter's transcript of the hearing on plaintiff's motion for attorney fees. In their briefs filed in the Court of Appeal and in this court, neither party has provided a factual narrative of the dispute underlying the lawsuit, nor did the Court of Appeal's opinion contain such a narrative. To provide a more complete perspective on the issue presented here, the following facts have been gleaned from the appellate record.

In November 1989, defendant City of Los Angeles (City) hired plaintiff Robert Chavez as a police officer in the Los Angeles Police Department (Department). In 1996, while assigned to the Department's Southwest Division, plaintiff was accused of stealing payroll checks. After a lengthy investigation, the Department determined that plaintiff was not the officer who had stolen the checks.

In February 1997, plaintiff was transferred to the Department's Hollenbeck Division. There, plaintiff told his captain that he was under surveillance by the Department's Internal Affairs Group. Concerned that plaintiff appeared to have paranoid beliefs, the captain ordered him to be seen by the Department's Behavioral Science Services unit. Between April 1997 and September 1998, plaintiff attended 10 sessions with Behavioral Science Services. Meanwhile, in September 1997, plaintiff was transferred to the Department's 77th Street Division.

In April 1998, plaintiff filed a lawsuit (Super. Ct. L.A. County, No. BC189182) against the City and one Sergeant Berglund, alleging claims for defamation, intentional infliction of emotional distress, invasion of privacy, and civil rights violations, all resulting from the 1996 stolen checks incident. From December 1998 to May 1999, plaintiff made numerous complaints to the Department alleging that he was being harassed in retaliation for having filed that lawsuit. In particular, plaintiff complained that Department helicopters were hovering above his house, which is located in Alhambra, a city outside the Department's jurisdiction.

On April 14, 1999, in response to a silent alarm, plaintiff and other officers went to a laundromat where they investigated alleged robberies. Two days later, the laundromat's owner lodged a personnel complaint against those officers.[2] As a result, the Department began an investigation of plaintiff's conduct at the laundromat. On May 27, 1999, plaintiff left work on stress

[2] Although the appellate record does not include a copy of the laundromat owner's personnel complaint, it appears the owner asserted that the officers had failed to interview the alleged robbery victim or victims.

leave, under the care of a psychologist, and did not return to work until March 10, 2000. Plaintiff has alleged that on several occasions during this stress leave, Department helicopters again hovered over his Alhambra residence.

On December 21, 1999, the superior court dismissed plaintiff's lawsuit against the City and Sergeant Berglund arising from the false accusation that plaintiff had stolen payroll checks. On January 10, 2000, plaintiff and his wife presented to the City a claim for damages allegedly resulting from harassment and/or surveillance by Department helicopters at their Alhambra home. The Department's Air Support Division investigated these allegations and determined they were unfounded.[3] On March 1, 2000, the City denied the claim for damages.

On March 10, 2000, when plaintiff returned to work at the Department's 77th Street Division, he was served with a written notice that the Department intended to suspend him for five days for neglect of duty during the laundromat incident in April 1999.[4] Plaintiff resumed patrol duties for three days, but his supervisors then assigned him to various administrative tasks until he could be seen and cleared by a staff psychologist of the Department's Behavioral Science Services.

On March 24, 2000, plaintiff submitted to California's Department of Fair Employment and Housing an administrative complaint under the FEHA alleging unlawful employment discrimination (on the basis of race, color, marital status, medical condition, national origin/ancestry, and disability), harassment, and retaliation. In the administrative complaint, as "act or acts of harm," plaintiff mentioned his five-day suspension, a "pattern of incidents" at work producing a hostile environment, an internal affairs investigation, and a "change of medical leave to personal leave." The Department of Fair Employment and Housing gave plaintiff a right-to-sue notice. (See Gov. Code, § 12965, subd. (b).)

On March 26, 2000, plaintiff requested a transfer from the Department's 77th Street Division. On April 26, 2000, Commander Harlan Ward, one of plaintiff's supervisors, approved the transfer request.

In May 2000, plaintiff and his wife filed a lawsuit (Super. Ct. L.A. County, No. BC229922) against the City and three of plaintiff's supervisors at the 77th Street Division—Commander Ward and Lieutenants Krejci and

---

[3] In fairness to plaintiff, we note that the appellate record includes the declarations of three of plaintiff's neighbors corroborating his assertion that Department helicopters hovered over his house.

[4] The appellate record does not include a copy of the suspension notice. It appears that the "neglect of duty" was plaintiff's failure to interview victims and/or witnesses at the laundromat.

Von Lutzow—alleging employment discrimination, harassment, and retaliation in violation of the FEHA (as to plaintiff); trespass (as to both plaintiff and his wife); and loss of consortium (as to plaintiff's wife). Plaintiff later amended the complaint in that action to add causes of action for nuisance and inverse condemnation. Two weeks after plaintiff and his wife filed the original complaint in that action, Commander Ward rescinded the order granting plaintiff's request to transfer to another division.

In June 2000, plaintiff submitted another FEHA administrative complaint, this time alleging that the transfer order was rescinded in retaliation for his May 2000 filing of the lawsuit asserting causes of action under the FEHA against the City and the three individual defendants. At plaintiff's request, the Department of Fair Employment and Housing immediately gave him a right-to-sue notice.

In August 2000, plaintiff and his wife filed a complaint in federal district court against the City, the Department, and five fictitiously named defendants, asserting a claim for violation of civil rights under sections 1983 and 1988 of title 42 of the United States Code.

In October 2000, plaintiff was transferred from the Department's 77th Street Division to its Southwest Division, where he resumed patrol duties.

In March 2001, plaintiff and his wife asked the federal district court to exercise pendent jurisdiction over their state law FEHA and nuisance claims. The City did not oppose the request, which the district court granted. On April 28, 2001, plaintiff left work on stress leave again, and as of July 2002 he had not returned to work.[5] On May 15, 2001, plaintiff's state court action was dismissed.

In May 2002, in the federal district court, plaintiff agreed to dismissal of his claim of racial discrimination. In September 2002, the federal district court granted summary judgment for the defendants. Plaintiff and his wife appealed to the Ninth Circuit Court of Appeals.

In September 2004, the Ninth Circuit issued a memorandum decision reversing the summary judgment in part and remanding the matter to the

---

[5] The record does not indicate when, if ever, plaintiff returned to work for the City as a police officer, although in the complaint that plaintiff filed in November 2004 he described himself as a police officer who was then currently employed by the City.

federal district court. In its decision, the federal appellate court reached these conclusions: (1) plaintiff's title 42 United States Code section 1983 civil rights claim failed for lack of evidence that either the City or the Department had a custom or policy of making harassing helicopter overflights of officers or citizens; (2) the district court properly granted summary judgment on plaintiff's FEHA claim of a hostile work environment because the instances of alleged harassment were not sufficiently severe or pervasive to alter the conditions of plaintiff's employment; (3) plaintiff's FEHA claim of retaliation, insofar as it was based on removing him from patrol duty after his nine-month stress leave or suspending him for five days after investigation of a citizen complaint, failed because plaintiff did not produce sufficient evidence to show a retaliatory motive for either of those actions; and (4) plaintiff and his wife waived the nuisance and invasion of privacy claims by failing to sufficiently argue them. The Ninth Circuit remanded the matter for the district court to determine whether the temporary rescission of plaintiff's transfer constituted an adverse employment action and to resolve material factual issues regarding plaintiff's FEHA discrimination claim based on his reassignment from patrol duty to administrative duty. The Ninth Circuit's decision provided that neither party would recover costs. On remand, the federal district court dismissed plaintiff's remaining FEHA claims without prejudice to refiling them in state court.

In November 2004, plaintiff filed this lawsuit (Super. Ct. L.A. County, No. BC324514) against the City, Ward, Krejci, and Von Lutzow, alleging claims under the FEHA for employment discrimination and harassment on the basis of a perceived mental disability, and unlawful retaliation for submitting the FEHA administrative complaints and for filing the state and federal actions asserting the FEHA claims. In October 2005, the superior court conducted a five-day jury trial on plaintiff's claims. After plaintiff rested, the trial court granted a motion for nonsuit as to defendant Von Lutzow. On October 14, 2005, the jury returned special verdicts. Regarding plaintiff's FEHA claim of employment discrimination based on a perceived mental disability, the jury found that neither defendant Ward nor defendant Krejci perceived plaintiff as having a mental disability, and that the actions of defendants Ward and Krejci did not cause plaintiff any damage, loss, or harm. Regarding plaintiff's FEHA retaliation claim, the jury found that plaintiff had engaged in protected activity, that defendant Ward rescinded plaintiff's transfer, that plaintiff's protected activity was a motivating factor in defendant Ward's decision to rescind the transfer, and that the transfer rescission proximately caused plaintiff $1,500 in economic damages "including loss in overtime and cash detail" and $10,000 in noneconomic damages "including mental suffering and emotional distress."

On October 25, 2005, plaintiff filed a motion for costs in the amount of $13,144.26 and a separate motion for attorney fees in the amount of $436,602.75. In support of the motion for attorney fees, plaintiff's attorney submitted a declaration that included a 40-page itemized statement of the services she had performed in prosecuting plaintiff's claims against the City. She reported a total of 1,851.43 hours for services beginning on January 12, 2000, and continuing through October 24, 2005, including services performed in the prosecution of the previous state and federal lawsuits.

On October 31, 2005, the superior court entered judgment on the jury's special verdicts in plaintiff's favor against the City and Ward in the amount of $11,500. On December 30, 2005, plaintiff filed an amended motion for attorney fees, correcting errors in the itemized statement and adding a "2x" multiplier to the "lodestar" calculation, so that the requested fees increased to $870,935.50. Defendants (the City and Ward) filed their opposition to plaintiff's motion for attorney fees, asserting that plaintiff had "overreached and outrageously inflated his fee request" and asking that attorney fees be denied altogether or alternatively reduced to $44,459.37.

After a hearing, the superior court denied the motion for attorney fees. In its written order, the court noted that plaintiff's case at trial had been "overwhelmingly devoted to liability," that none of plaintiff's witnesses gave any direct testimony about economic damages, and that plaintiff had offered no rebuttal to the testimony of defendants' expert, who put plaintiff's economic loss resulting from the temporary rescission of his transfer at "just under $1,000." According to the court, plaintiff's evidence of noneconomic damages "was equally sparse," particularly as it related to the temporary rescission of the transfer. After describing the relevant evidence, the superior court concluded: "The above detail is provided by the Court to explain its reasoning in applying its discretion under [section 1033(a)] to deny attorney fees (as costs under [Code Civ. Proc., § 1033.5, subd.] (a)(10)). The court is guided in this also by *Steele v. Jensen*[, *supra*,] 59 Cal.App.4th 326, wherein the Court's discretion to deny fees was upheld in a case where the verdict was twice the amount of the instant one. Other cases cited by Plaintiff during oral argument are inapposite. [¶] Based on the foregoing, therefore, Plaintiff's 2nd Amended Motion for Attorney's Fees is denied."

On plaintiff's appeal from the order denying attorney fees, the Court of Appeal reversed. It agreed with plaintiff that in denying the motion for attorney fees the trial court had "applied the wrong statutory standard and abused its discretion." The Court of Appeal faulted the trial court for not

referring to the FEHA in its three-page written ruling and for making no express finding of a special circumstance that justified denying attorney fees to a prevailing FEHA plaintiff. Asserting that "section 1033 does not apply in actions brought under FEHA," the Court of Appeal reasoned that the rationale of section 1033(a) was "to encourage pursuit of minor grievances in courts of limited jurisdiction" and that this rationale "is inapposite in statutory discrimination or civil rights actions" because "[e]ven a modest financial recovery can serve to vindicate a substantial legal right." Thus, in the Court of Appeal's view, the FEHA and section 1033(a) "serve laudable but conflicting public policies." Also, denying attorney fees under section 1033(a) "would discourage attorneys from taking meritorious cases."

The Court of Appeal agreed with plaintiff's attorney that, as a practical matter, she could not have filed this action as a limited civil case because, "[e]ven in its final, more streamlined form," it "involved two complex causes of action against four defendants" and if the action had been brought as a limited civil case, plaintiff "could not have deposed all the named defendants, let alone other essential witnesses." The court noted that the City had "flatly resisted all settlement discussions and never made a substantive offer" and that this had "forced [plaintiff] to engage in extensive discovery and litigate the action for five years through the state and federal trial and appellate courts." Without expressing any opinion on the amount of fees that plaintiff should be awarded, the Court of Appeal remanded the matter to the trial court "for proper application of Government Code section 12965, subdivision (b)."

We granted defendants' petition for review.

## II

This case requires that we determine the proper interaction of two statutory provisions—section 1033(a) and Government Code section 12965's subdivision (b). We begin with an overview of those provisions.

### A. *Section 1033(a)*

Section 1033(a) provides: "Costs or any portion of claimed costs shall be as determined by the court in its discretion in a case other than a limited civil case in accordance with Section 1034 where the prevailing party recovers a judgment that could have been rendered in a limited civil case." In other words, section 1033(a) applies when a plaintiff has obtained a judgment for money damages in an amount (now $25,000 or less) that could have been recovered in a limited civil case, but the plaintiff did not bring the action as a limited civil case and thus did not take advantage of the cost- and time-saving advantages of limited civil case procedures. In this situation, even though a

plaintiff who obtains a money judgment would otherwise be entitled to recover litigation costs as a matter of right, section 1033(a) gives the trial court discretion to deny, in whole or in part, the plaintiff's recovery of litigation costs.

The origins of this provision can be traced to former sections 1022 and 1025 of the Code of Civil Procedure, as enacted in 1872. Under those former code sections, a plaintiff who received a money judgment for $300 or more was entitled to recover costs, but no costs could be recovered by a plaintiff who received a money judgment for a lesser amount. (See *Murphy v. Casey* (1910) 13 Cal.App. 781, 784 [110 P. 956].)

Effective January 1, 1934, this subject was addressed by subdivision (a) of former section 1032 of the Code of Civil Procedure, which stated that a plaintiff who brought an action for the recovery of money or damages in superior court could not recover costs "when the judgment is one which could have been rendered by a municipal or inferior court within the same county or city and county." (Stats. 1933, ch. 744, § 191, p. 1901.) One Court of Appeal explained that the purpose of the provision was "to force plaintiffs to bring their cases in the inferior courts wherever possible, and to penalize them if they do not do so." (*Shotwell v. Bloom* (1943) 60 Cal.App.2d 303, 316 [140 P.2d 728].)

In 1953, the Legislature amended former section 1032 of the Code of Civil Procedure to provide, in subdivision (d), that "if the prevailing party recovers a judgment that could have been rendered in a court inferior in jurisdiction in the county or city and county, the court may *at its discretion* allow or deny costs to such prevailing party, or may allow costs in part in such amount as it deems proper." (Stats. 1953, ch. 910, § 1, pp. 2265, 2266, italics added.) This amendment "was a legislative effort to relax the strict rule that no costs were recoverable by a plaintiff who selected the wrong court, and to permit the trial judge to allow costs to a plaintiff in a proper case." (*Young v. General Telephone Co.* (1977) 75 Cal.App.3d 177, 182 [142 Cal.Rptr. 57].)

In 1986, the Legislature repealed former section 1032 of the Code of Civil Procedure and moved the substance of that section's subdivision (d) to newly enacted Code of Civil Procedure section 1033, which as originally enacted read: "Costs or any portion of claimed costs shall be as determined by the court in its discretion in accordance with Section 1034 where the prevailing party recovers a judgment that could have been rendered in a court of lesser jurisdiction." (Stats. 1986, ch. 377, § 11, p. 1579.) In 1998, to accommodate the unification of the superior and municipal courts, section 1033(a) was amended to its current wording: "Costs or any portion of claimed costs shall be as determined by the court in its discretion in a case other than a limited

civil case in accordance with Section 1034 where the prevailing party recovers a judgment that could have been rendered in a limited civil case." (Stats. 1998, ch. 931, § 107.)

The Courts of Appeal have identified factors that a trial court should ordinarily consider in exercising its discretion under section 1033(a), including the amount of damages the plaintiff reasonably and in good faith could have expected to recover and the total amount of costs that the plaintiff incurred. (*Dorman v. DWLC Corp.* (1995) 35 Cal.App.4th 1808, 1816–1817 [42 Cal.Rptr.2d 459]; *Valentino v. Elliott Sav-On Gas, Inc.* (1988) 201 Cal.App.3d 692, 702 [247 Cal.Rptr. 483]; *Greenberg v. Pacific Tel. & Tel. Co.* (1979) 97 Cal.App.3d 102, 108 [158 Cal.Rptr. 558].)

### B. *Government Code Section 12965, Subdivision (b)*

In enacting the FEHA, the Legislature sought to safeguard the rights of all persons to seek, obtain, and hold employment without discrimination on account of various characteristics, which now include race, religion, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, and sexual orientation. (Gov. Code, § 12920; see *Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 891 [66 Cal.Rptr.2d 888, 941 P.2d 1157].) Government Code section 12965, subdivision (b), which authorizes employees to bring civil actions seeking damages for violations of the FEHA, contains this attorney fee provision: "In actions brought under this section, the court, in its discretion, may award to the prevailing party reasonable attorney's fees and costs . . . ." In FEHA actions, attorney fee awards, which make it easier for plaintiffs of limited means to pursue meritorious claims (*Cummings v. Benco Building Services* (1992) 11 Cal.App.4th 1383, 1387 [15 Cal.Rptr.2d 53]), "are intended to provide 'fair compensation to the attorneys involved in the litigation at hand and encourage[] litigation of claims that in the public interest merit litigation.' " (*Flannery v. Prentice* (2001) 26 Cal.4th 572, 584 [110 Cal.Rptr.2d 809, 28 P.3d 860].)

In interpreting California's FEHA, California courts often look for guidance to decisions construing federal antidiscrimination laws, including title VII of the federal Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) (Title VII). (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1040 [6 Cal.Rptr.3d 441, 79 P.3d 556].) But federal court interpretations of Title VII are helpful in construing the FEHA only when the relevant language of the two laws is similar. (*State Dept. of Health Services v. Superior Court, supra,* at p. 1040.)

Title VII contains an attorney fee provision with language similar to the FEHA's attorney fee provision. (42 U.S.C. § 2000e-5(k) ["In any action or

proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . ."].) Accordingly, in interpreting the FEHA's attorney fee provisions, California courts have looked for guidance to federal decisions construing Title VII's attorney fee provision. (See, e.g., *Linsley v. Twentieth Century Fox Film Corp.* (1999) 75 Cal.App.4th 762, 766–771 [89 Cal.Rptr.2d 429]; *Hon v. Marshall* (1997) 53 Cal.App.4th 470, 475–478 [62 Cal.Rptr.2d 11].) The United States Supreme Court has held that, in a Title VII case, a *prevailing plaintiff* should ordinarily recover attorney fees unless special circumstances would render the award unjust, whereas a *prevailing defendant* may recover attorney fees only when the plaintiff's action was frivolous, unreasonable, without foundation, or brought in bad faith. (*Christiansburg Garment Co. v. EEOC* (1978) 434 U.S. 412, 416–417, 421–422 [54 L.Ed.2d 648, 98 S.Ct. 694].) California courts have adopted this rule for attorney fee awards under the FEHA. (*Young v. Exxon Mobil Corp., supra,* 168 Cal.App.4th 1467, 1474; *Rosenman v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro* (2001) 91 Cal.App.4th 859, 865 [110 Cal.Rptr.2d 903]; *Cummings v. Benco Building Services, supra,* 11 Cal.App.4th 1383, 1386–1388.)

■ This court has stated that "[i]n deciding whether to, and how to, award fees under section 12965, subdivision (b), courts will look to the rules set forth in cases interpreting [Code of Civil Procedure] section 1021.5." (*Tipton-Whittingham v. City of Los Angeles* (2004) 34 Cal.4th 604, 610 [21 Cal.Rptr.3d 371, 101 P.3d 174].) Under Code of Civil Procedure section 1021.5, if a court determines that attorney fees should be awarded, computation of those fees is based on the lodestar adjustment method as set forth in *Serrano v. Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303]. (*Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 321 [193 Cal.Rptr. 900, 667 P.2d 704].) Using that method, the trial court first determines a touchstone or lodestar figure based on a careful compilation of the time spent by, and the reasonable hourly compensation for, each attorney, and the resulting dollar amount is then adjusted upward or downward by taking various relevant factors into account. (*Id.* at p. 322; see also *Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 639 [71 Cal.Rptr.2d 632].) When using the lodestar method to calculate attorney fees under the FEHA, the ultimate goal is "to determine a 'reasonable' attorney fee, and not to encourage unnecessary litigation of claims that serve no public purpose either because they have no broad public impact or because they are factually or legally weak." (*Weeks v. Baker & McKenzie* (1998) 63 Cal.App.4th 1128, 1173 [74 Cal.Rptr.2d 510].)[6]

---

[6] In construing Code of Civil Procedure section 1021.5's attorney fee provision, this court has not always followed federal court decisions construing analogous provisions of federal law. (See, e.g., *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 568–569 [21 Cal.Rptr.3d 331, 101 P.3d 140].) It has also been observed that "an upward or downward adjustment from

## III

We consider first whether, as the Court of Appeal concluded, section 1033(a) does not apply to an action brought under the FEHA. The issue presented is essentially one of statutory construction. When engaged in statutory construction, our aim is "to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law." (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715 [3 Cal.Rptr.3d 623, 74 P.3d 726]; accord, *Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1087 [29 Cal.Rptr.3d 234, 112 P.3d 623].) "We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent." (*Hassan v. Mercy American River Hospital, supra,* at p. 715.) When construing the interaction of two potentially conflicting statutes, we strive to effectuate the purpose of each by harmonizing them, if possible, in a way that allows both to be given effect. (*Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 943 [38 Cal.Rptr.3d 220, 126 P.3d 1040]; *Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 324 [25 Cal.Rptr.3d 320, 106 P.3d 976]; *County of San Bernardino v. City of San Bernardino* (1997) 15 Cal.4th 909, 933 [64 Cal.Rptr.2d 814, 938 P.2d 876].)

In the situation presented here, we perceive no irreconcilable conflict between section 1033(a) and the FEHA's attorney fee provision. In exercising its discretion under section 1033(a) to grant or deny litigation costs, including attorney fees, to a plaintiff who has recovered FEHA damages in an amount that could have been recovered in a limited civil case, the trial court must give due consideration to the policies and objectives of the FEHA and determine whether denying attorney fees, in whole or in part, is consistent with those policies and objectives. If so, the plaintiff's failure to take advantage of the time- and cost-saving features of the limited civil case procedures may be considered a special circumstance that would render a fee award unjust.

In determining whether a FEHA action should have been brought as a limited civil case, the trial court should consider FEHA's underlying policy of encouraging the assertion of meritorious FEHA claims, and it should evaluate the entire case in light of the information that was known, or should have been known, by the plaintiff's attorney when the action was initially filed and as it developed thereafter. (See Code Civ. Proc., § 403.040 [motion to reclassify pending action as limited civil case].) In making this evaluation, the trial court should exercise caution to avoid "hindsight bias," which is the

the lodestar figure will be far more common under California law than under federal law." (*Weeks v. Baker & McKenzie, supra,* 63 Cal.App.4th at p. 1173.)

recognized tendency for individuals to overestimate or exaggerate the predictability of events after they have occurred. (See *Christiansburg Garment Co. v. EEOC, supra*, 434 U.S. 412, 421–422 [cautioning courts, in deciding whether to award attorney fees to a prevailing defendant in an antidiscrimination action, to "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation"]; see also *KSR Int'l Co. v. Teleflex Inc.* (2007) 550 U.S. 398, 421 [167 L.Ed.2d 705, 127 S.Ct. 1727] [recognizing risk of hindsight bias in patent decisions].)  ▉  If, based on the available information, the plaintiff's attorney might reasonably have expected to be able to present substantial evidence supporting a FEHA damages award in an amount exceeding the damages limit (now $25,000) for a limited civil case, or if the plaintiff's attorney might reasonably have concluded that the action could not be fairly and effectively litigated as a limited civil case, the trial court should not deny attorney fees merely because, for example, the trier of fact ultimately rejected the testimony of the plaintiff's witnesses or failed to draw inferences that were reasonably supported, although not compelled, by the plaintiff's evidence. But if, to the contrary, the trial court is firmly persuaded that the plaintiff's attorney had no reasonable basis to anticipate a FEHA damages award in excess of the amount recoverable in a limited civil case, and also that the action could have been fairly and effectively litigated as a limited civil case, the trial court may deny, in whole or in part, the plaintiff's claim for attorney fees and other litigation costs.

The Court of Appeal in *Steele v. Jensen Instrument Co., supra*, 59 Cal.App.4th 326, reached a similar conclusion. There, the plaintiff brought a FEHA action in superior court against her employer and two individuals, alleging pregnancy discrimination; a jury trial resulted in a damage award in her favor for $21,078. (59 Cal.App.4th at p. 328.) Because the damage award was less than $25,000, and thus, at that time (before the unification of the municipal and superior courts), could have been recovered in municipal court, the trial court, relying on section 1033(a), denied the plaintiff her litigation costs, including attorney fees.[7] (*Steele v. Jensen Instrument Co., supra*, at pp. 329–330.) The Court of Appeal affirmed. It acknowledged that the interplay between Code of Civil Procedure section 1033(a) and the FEHA attorney fee provision (Gov. Code, § 12965, subd. (b)) is complex, but it concluded that when the amount of damages that a FEHA plaintiff recovers in superior court could have been awarded by a court of lesser jurisdiction (at

---

[7] Because the amount the plaintiff recovered in damages was less than the defendants' offer of compromise (Code Civ. Proc., § 998), which the plaintiff had rejected, the trial court awarded costs to the employer. (*Steele v. Jensen Instrument Co., supra*, 59 Cal.App.4th at p. 329.) The Court of Appeal upheld that award, but that aspect of its decision is not relevant to the issues we address here.

that time, the municipal court), the trial court has discretion to deny costs, including attorney fees, to the plaintiff. (*Steele v. Jensen Instrument Co.*, *supra*, 59 Cal.App.4th at p. 331.)

Here, in support of its conclusion that section 1033(a) does not apply to FEHA actions, the Court of Appeal reasoned that section 1033(a) "is designed to encourage pursuit of minor grievances in courts of limited jurisdiction," whereas a FEHA action is a "bona fide civil rights claim" that "serve[s] to vindicate a substantial legal right" and therefore can never appropriately be characterized as "an insignificant grievance." We disagree. Section 1033(a)'s purpose is to encourage plaintiffs to bring their actions as limited civil actions whenever it is reasonably practicable to do so. (See *Young v. General Telephone Co.*, *supra*, 75 Cal.App.3d 177, 181 [construing statutory predecessor of § 1033(a)].) This purpose does not require or involve a characterization of the underlying claim as major or minor or as significant or insignificant; rather, what it requires is a realistic appraisal of the amount of damages at issue and whether the action might fairly have been litigated using the streamlined procedures of limited civil actions.

Furthermore, there is no indication in the statutory provisions governing FEHA actions or those governing limited civil cases that the Legislature has ever intended to prohibit the use of limited civil case procedures for the prosecution of FEHA claims. Code of Civil Procedure section 85, which sets out the criteria for determining whether an action or special proceeding is to be treated as a limited civil case, does not mention FEHA claims or prohibit their being litigated as limited civil cases. Also instructive is Government Code section 12965, subdivision (b), which authorizes aggrieved parties to file lawsuits asserting FEHA claims. Before the consolidation of the superior and municipal courts, this provision granted both superior and municipal courts jurisdiction over actions asserting FEHA claims. (Gov. Code, former § 12965, subd. (b), as amended by Stats. 1998, ch. 931, § 183, p. 6496.) As currently worded, this provision merely states that superior courts have jurisdiction of these actions, without drawing any distinction between limited and unlimited civil actions. (See *id.,* § 12965, subd. (b), as amended by Stats. 2003, ch. 62, § 118.)

The Court of Appeal here also reasoned that litigating a FEHA claim is "invariably expensive and time consuming in terms of the quantity of discovery conducted and the inevitability of summary judgment or other extensive pretrial motions." Here also, we disagree. Although extensive discovery may be conducted in many or even most FEHA actions, this does not mean that elaborate discovery proceedings are invariably necessary to effectively litigate a FEHA claim. Moreover, although in limited civil cases the discovery permitted as of right is restricted (see Code Civ. Proc., § 94), the trial court may authorize additional discovery upon a showing "that the

moving party will be unable to prosecute or defend the action effectively without the additional discovery" (*id.,* § 95, subd. (a)), or the parties may stipulate to additional discovery (*id.,* § 95, subd. (b)). And summary judgment motions are permitted in limited civil cases. (See *id.,* § 92, subd. (e).)

■ Giving effect to the plain meaning of the statutory language at issue, and construing the relevant statutory provisions in a way that allows both to be given effect, we hold, therefore, that section 1033(a), which grants the trial court discretion to deny costs to a plaintiff who recovers damages that could have been recovered in a limited civil case, applies to actions asserting FEHA claims.

## IV

We now examine the trial court's ruling denying attorney fees to plaintiff. That ruling is subject to the abuse-of-discretion standard of review. (*Steele v. Jensen Instrument Co., supra,* 59 Cal.App.4th at p. 331; *Cummings v. Benco Building Services, supra,* 11 Cal.App.4th at p. 1387.)

■ Under federal law, when determining a prevailing plaintiff's attorney fees in an action for violation of civil rights (42 U.S.C. § 1988), the extent of a plaintiff's success is a crucial factor. (*Hensley v. Eckerhart* (1983) 461 U.S. 424, 440 [76 L.Ed.2d 40, 103 S.Ct. 1933].) If a plaintiff has prevailed on some claims but not others, fees are not awarded for time spent litigating claims unrelated to the successful claims, and the trial court "should award only that amount of fees that is reasonable in relation to the results obtained." (*Ibid.*) Although attorney fees need not be strictly proportionate to the damages recovered (*Riverside v. Rivera* (1986) 477 U.S. 561, 574 [91 L.Ed.2d 466, 106 S.Ct. 2686]), "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief [citation], the only reasonable fee is usually no fee at all" (*Farrar v. Hobby* (1992) 506 U.S. 103, 115 [121 L.Ed.2d 494, 113 S.Ct. 566]).

On this point, California law is consistent with federal law. Although fees are not reduced when a plaintiff prevails on only one of several factually related and closely intertwined claims (*Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 431 [69 Cal.Rptr.3d 1]), "under state law as well as federal law, a reduced fee award is appropriate when a claimant achieves only limited success" (*Sokolow v. County of San Mateo* (1989) 213 Cal.App.3d 231, 249 [261 Cal.Rptr. 520]; accord, *Feminist Women's Health Center v. Blythe* (1995) 32 Cal.App.4th 1641, 1674 [39

Cal.Rptr.2d 189]; see also *Harrington v. Payroll Entertainment Services, Inc.* (2008) 160 Cal.App.4th 589, 594 [72 Cal.Rptr.3d 922]).

Here, the extent of plaintiff's success was modest at best. Plaintiff sought attorney fees for a total of 1,851.43 attorney hours between January 12, 2000, and October 24, 2005, during which plaintiff's attorney brought and litigated on plaintiff's behalf two actions in Los Angeles County Superior Court (No. BC229922, filed May 12, 2000, and No. BC324514, filed Nov. 15, 2004) and one action in federal district court (filed Aug. 1, 2000), which also included time spent on an appeal to the Ninth Circuit. In these actions, plaintiff asserted claims of employment discrimination, harassment, and retaliation in violation of California's FEHA; violation of civil rights under sections 1983 and 1988 of title 42 of the United States Code; nuisance; trespass; inverse condemnation; invasion of privacy; and loss of consortium (as to plaintiff's wife). Plaintiff claimed employment discrimination on the bases of race and perceived mental disability. The employment actions on which the claims were based included plaintiff's five-day suspension resulting from the laundromat incident, his assignment to administrative duties after his extended stress leave, remarks of supervisors and coworkers, the alleged helicopter overflights of his house, and the temporary rescission of the order granting his transfer request. The only claim on which plaintiff succeeded in recovering damages was the claim that the interdivision transfer order was temporarily rescinded in retaliation for plaintiff's assertion of his other, ultimately unsuccessful, FEHA claims. All of the other claims were dismissed or found to be lacking in merit.[8]

Plaintiff does not claim that his success on the single FEHA retaliation claim had any broad public impact or resulted in significant benefit to anyone other than himself. Because this single successful claim apparently was not closely related to or factually intertwined with plaintiff's many unsuccessful claims, the trial court reasonably could and presumably did conclude that plaintiff was not entitled to attorney fees for time spent litigating those unsuccessful claims.

■ Whether plaintiff was entitled to an award of attorney fees for time spent litigating the single successful claim requires consideration of another established principle governing attorney fee awards: "A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether." (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 635 [186 Cal.Rptr. 754, 652 P.2d 985]; accord, *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1137 [104 Cal.Rptr.2d 377, 17 P.3d 735].)

---

[8] The temporary rescission of the interdivision transfer had not yet occurred when plaintiff brought his May 2000 action in state court. This means, of course, that all of the claims in that action as initially filed were lacking in merit.

Here, the trial court reasonably could and presumably did conclude that plaintiff's attorney fee request in the amount of $870,935.50 for 1,851.43 attorney hours was grossly inflated when considered in light of the single claim on which plaintiff succeeded, the amount of damages awarded on that claim, and the amount of time an attorney might reasonably expect to spend in litigating such a claim. This fact alone was sufficient, in the trial court's discretion, to justify denying attorney fees altogether.

Lastly, the trial court could, and did, reasonably conclude that this action should have been brought as a limited civil case. As the trial court carefully explained in its statement of decision, plaintiff's evidence in support of the FEHA retaliation claim was seriously deficient on one essential element: damages. Plaintiff presented no evidence at all of the amount of economic loss caused by the temporary rescission of the interdivision transfer, and the trial court characterized plaintiff's evidence regarding the emotional distress he suffered as a result of that rescission as "equally sparse." Plaintiff does not dispute the accuracy of the trial court's characterization of the evidence relating to damages, nor could he successfully do so, as the appellate record before us does not include trial transcripts. The trial court was familiar with all of the trial proceedings and with the evidence presented at trial. It was therefore in a much better position than this court, or the Court of Appeal, to determine whether this action could fairly and effectively have been litigated as a limited civil case and also whether plaintiff's attorney should have realized, well before the action proceeded to trial, that plaintiff's injury was too slight to support a damage recovery in excess of $25,000. We have no reason to question the trial court's implied determinations on these points. Thus, there was no abuse of discretion in the trial court's decision denying an attorney fee award to plaintiff.

In the explanation for its decision denying plaintiff's attorney fee claim, the trial court did not expressly mention the FEHA. The trial court did state, however, that in making its ruling it had been "guided by" *Steele v. Jensen Instrument Co., supra,* 59 Cal.App.4th 326, in which the Court of Appeal, after characterizing as "complex" the interplay between section 1033(a) and the FEHA's attorney fee provision, held that section 1033(a) applies in FEHA actions. We conclude that the trial court's explanation of the reasons for its decision to deny plaintiff's attorney fee claim, although not as comprehensive or focused as an appellate court would prefer, was adequate to support the ruling.

## DISPOSITION

The Court of Appeal's judgment is reversed.

George, C. J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.