Filed 5/3/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARISA HERNANDEZ,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RANCHO SANTIAGO COMMUNITY<br>COLLEGE DISTRICT,<br><br>    Defendant and Appellant. | G054563<br><br>(Super. Ct. No. 30-2015-00773691)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Kim Garlin Dunning, Judge.  Affirmed.

Declues, Burkett & Thompson, Jeffrey P. Thompson and Steven J. Lowery for Defendant and Appellant.

Law Offices of Robert S. Scuderi and Robert S. Scuderi for Plaintiff and Respondent.

\*          \*          \*

Plaintiff Marisa Hernandez worked for defendant Rancho Santiago Community College District on and off for a number of years without any complaints about her performance. In 2013, she was hired as an administrative assistant. During her one-year probationary period, her performance was to be evaluated at three months, seven months, and 11 months. At the completion of 12 months of probation, she would be considered a permanent employee. Eight months into her probationary period and with the district's consent, she went on a temporary disability leave to have surgery to replace a knuckle on a finger she injured while working for the district prior to her most recent hiring. She was scheduled to return to work on, or shortly after, the anniversary of her hiring date. The district, however, terminated her while she was on the approved leave, because her performance had not been reviewed.

Hernandez sued the district under the California Fair Employment and Housing Act (the FEHA) (Gov. Code,[1] § 12940, subds. (m), (n)), contending it failed to make reasonable accommodation for her medical condition and failed to engage in an interactive process. At the conclusion of the court trial, the court found in Hernandez's favor and awarded her $723,746 in damages. The trial court found the district could have accommodated her by extending her probationary period, by deducting the four months she was on disability leave from her probationary period, or by adding the time away from work to the probationary period, and, contrary to the district's position, the district would not have been required to make Hernandez a permanent employee on the anniversary of her hiring. The district appeals, contending it had to terminate Hernandez's probation and employment because if it did not, she would have become a permanent employee without having had her performance evaluated. We affirm the judgment.

---

[1] All further statutory references are to the Government Code, unless otherwise indicated.

2

# I

## FACTS[2]

A. *Evidence Admitted at Trial*

Hernandez's 2013 hiring was the third time she worked for the district. During her second stint with the district, she was injured at work on September 4, 2012, when her right ankle became entangled in cords underneath her desk. Hernandez fell, hitting her shoulder, her right knee, and left hand against a filing cabinet.

Hernandez was to be on probation for a year with the latest hiring. Reviews were due at three, seven, and 11 months. Her job performance was not evaluated after three months or after seven months. When she did not receive her review after three months, she called the vice-president of student affairs, who had stated she and Dean Bryant would take care of all human resources matters. No one ever got back to Hernandez about that review. She called again when it was time for her seven-month review. Hernandez said she was "freaked out" because she had not heard from anyone about her reviews and she wanted to know how she was doing in her job. No one ever told Hernandez there was any issue with her performance.

The injuries Hernandez suffered in 2012 all healed, except for the injury to one of her fingers. That finger had been broken, but it had not been diagnosed at the time of the injury. A knuckle had been "completely destroyed," causing her "considerable pain." Her doctor recommended surgery. On October 17, 2013, after she had already been working as a permanent administrative assistant for more than six months, Hernandez spoke with Donald Maus, the risk manager for the district, about her doctor's recommendation. She said Maus sounded angry and, because she started to feel intimidated by Maus, Hernandez asked him if she should not get the surgery. He did not advise against surgery. She asked if having the surgery was going to cost the district a lot

---

[2] The facts in this matter are essentially undisputed.

of money, and he said the schools rates would go up. Hernandez told Maus she was on probation and concerned about her job. He told her not to worry, "because you cannot be fired on a workers' comp case." Hernandez said that had he told her the surgery would affect her probation, she would have put off the surgery, because the job was important to her.

Hernandez's doctor estimated she would be out of work for three to four months. The district agreed to Hernandez taking time off for the surgery. Hernandez had surgery replacing her damaged knuckle with bone from a cadaver on November 18, 2014, slightly more than eight months after she started working as a permanent administrative assistant.

In late February 2014, Hernandez received a letter from Judyanne Chitlik, who works in the district's human resources department, terminating her employment with the district. Hernandez thought the district had made a mistake and sent the letter to the wrong person. She had no prior notice her job was in jeopardy. Hernandez called the telephone number in the letter and spoke to Chitlik's secretary who seemed nervous after hearing Hernandez's name and, after putting her on hold for a long time, the secretary said Chitlik was not available to talk to Hernandez. Hernandez asked when Chitlik would be available and the secretary said it would not be that week. The secretary refused to make an appointment for Hernandez. Hernandez then gave the secretary her telephone number, requesting Chitlik to call her back.

Chitlik returned Hernandez's telephone call a few hours later. In an angry voice, Chitlik told Hernandez, "You should [have] known better than to take a personal leave while you're on probation." Hernandez said she was on an approved workers compensation leave, not a personal leave, but Chitlik said it was a personal leave and that Hernandez was terminated from probation. Had Chitlik told Hernandez she could reapply for the position, she would have. Hernandez's belief, however, was that she could not reapply because her employment had been terminated.

4

B. *The Trial Court's Decision*

In an 11-page statement of decision, the trial court found Hernandez was a probationary employee who had a temporary total disability, and consequently, the district "had the option to deduct the time she was not able to work from her one-year probationary period or extend the probationary period by the number of days [Hernandez] was off work." The court found either would have been a reasonable accommodation and would have given her a 12-month probation. The trial court rejected the district's contention that it could not do either because it was required to make Hernandez a permanent employee on the anniversary of her hiring, and stated it would not have been an undue hardship to accommodate Hernandez by extending her probationary period.

The trial court also found the district's own attorney had advised that to terminate Hernandez might be considered disability discrimination, although the lawyer concluded the district could lawfully terminate her. Lastly, the trial court found the district failed to accommodate Hernandez's temporary total disability and failed to engage in any interactive process with her and instead, summarily terminated her employment.

II

DISCUSSION

A. *Validity of the Appeal*

The district filed its appeal in this matter on January 27, 2017, purporting to appeal from a judgment after trial and the statement of decision dated December 1, 2016. The judgment after trial was not entered and served until January 30, 2017. Hernandez contends "[t]he record fails to show any appeal has been filed to the judgment entered on January 30, 2017." She is technically correct.

"The general rule is that a statement or memorandum of decision is not appealable. [Citations.] The rule's practical justification is that courts typically embody

5

their final rulings not in statements of decision but in orders or judgments." (*Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 901.) "'Reviewing courts have discretion to treat statements of decision as appealable . . . .'" (*Pangilinan v. Palisoc* (2014) 227 Cal.App.4th 765, 769.) We choose to treat the notice of appeal as effective because the December 1, 2016 statement of decision was the result of the district's objections to the trial court's November 4, 2016 statement of decision, the statement of decision was signed, filed, and resolved all of Hernandez's causes of action. We therefore treat the district's appeal as timely. (*Ibid.*)

Hernandez also contends the district failed to present an adequate record on appeal to decide the present appeal because some of the exhibits and transcripts of testimony are not included in the record. However, there are only two issues argued in this appeal: 1) whether the district failed to provide a reasonable accommodation to Hernandez in violation of section 12940, subdivision (m), of the FEHA; and 2) whether the district failed to engage in an interactive process with Hernandez in violation of section 12940, subdivision (n), of the FEHA. The record on appeal is sufficient for this court to review these issues. (*Dawson v. Toledano* (2003) 109 Cal.App.4th 387, 402.)

B. *Standard of Review*

Under the substantial evidence test, we "presume that the trial court made all factual findings necessary to support the judgment so long as substantial evidence supports those findings." (*SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 462.) Under this standard, we determine "'"whether there is any substantial evidence, contradicted or uncontradicted," to support the findings below. [Citation.] We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor in accordance with the standard of review . . . .'" (*Escamilla v. Department of Corrections & Rehabilitation* (2006) 141 Cal.App.4th 498, 514.)

6

Questions of law are reviewed de novo. (*Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1089, fn. 10.) "Questions of statutory interpretation, and the applicability of a statutory standard to undisputed facts, present questions of law, which we review de novo." (*Jenkins v. County of Riverside* (2006) 138 Cal.App.4th 593, 604.)

C. *Analysis*

1. *Section 12940, Subdivision (m)*

A person's right to hold employment without discrimination based on a physical disability is protected by the FEHA (§ 12900 et seq.). (*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 984.) Section 12940 sets forth a number of unlawful employment activities. Subdivision (m)(1) of section 12940 makes it unlawful "[f]or an employer . . . to fail to make reasonable accommodation for the known physical or mental disability of an . . . employee. Nothing in this subdivision or in paragraph (1) or (2) of subdivision (a) shall be construed to require an accommodation that is demonstrated by the employer or other covered entity to produce undue hardship, as defined in subdivision (u) of Section 12926, to its operation."

There are three elements to a failure to accommodate action: "(1) the plaintiff has a disability covered by the FEHA; (2) the plaintiff is a qualified individual (i.e., he or she can perform the essential functions of the position); and (3) the employer failed to reasonably accommodate the plaintiff's disability. [Citation.]" (*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1192.) The district does not dispute Hernandez had a disability protected by the FEHA or that she is a qualified individual. The disputed issue is whether the district failed to reasonably accommodate Hernandez's disability.

The district argued giving Hernandez time off from work for her surgery and recovery was a reasonable accommodation. It argues it had to terminate her probation and employment when the anniversary of her hiring date approached because if

7

it did not, she would have become a permanent employee on the anniversary of her hiring under Education Code section 88013, subdivision (a),[3] without the district having had an opportunity to evaluate her performance. We disagree.

Yes, the district accommodated Hernandez by giving her time off for her surgery, but the accommodation can hardly be considered reasonable when it included the consequence that she would lose her job if she took the time off to undergo surgery. While "a finite leave can be a reasonable accommodation under FEHA, provided it is likely at the end of the leave, the employee would be able to perform . . . her duties" (*Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 226), a finite leave is not a reasonable accommodation when the leave leads directly to termination of employment because the employee's performance could not be evaluated while she was on the leave. We agree with the trial court that Education Code section 88013, subdivision (a), did not require the district to either terminate Hernandez's employment or make her a permanent employee on the anniversary date of her hiring.

This conclusion is borne out by reference to subdivision (n) of section 12940 (discussed *infra*). That subdivision requires an employer to engage in a good faith, interactive process with the employee "to determine *effective* reasonable accommodations." (§ 12940, subd. (n), italics added.) An "accommodation" that leads directly to termination of employment is not an *effective* accommodation and is not reasonable under the FEHA.

---

[3] "The governing board of a community college district shall prescribe written rules and regulations, governing the personnel management of the classified service, which shall be printed and made available to employees in the classified service, the public, and those concerned with the administration of this section, whereby these employees are, except as provided in Section 72411, designated as permanent employees of the district *after serving a prescribed period of probation which shall not exceed one year*." (Ed. Code, § 88013, subd. (a), italics added.)

8

Education Code section 88013, subdivision (a), states a probationary period shall not exceed one year. The statute provides the employer with a year in which to evaluate the employee's performance. It does *not* state whether there are periods of time that may be deducted from the year, such as when an employee has been injured on the job and unable to work for a period of time while on probation.

Both parties cite *Bell v. City of Torrance* (1990) 226 Cal.App.3d 189 (*Bell*). Bell sued the City of Torrance because it terminated her employment without first providing her a *Skelly* hearing.[4] The City contended Bell was still on probation at the time it terminated her employment and was not entitled to such a hearing. (*Id.* at p. 193.)

Bell began work for the City of Torrance on August 11, 1986. (*Bell*, *supra*, 226 Cal.App.3d at p. 191.) The memorandum of understanding (MOU) between the city and the employees' association provided for a one-year probationary period. (*Id.* at p. 192.) In April 1987, Bell was granted an extended unpaid leave for medical reasons. She returned to work in June 1987, and was told her probationary period was extended to October 27, 1987. This extension accounted for the 78-day period she was away from the job on leave. (*Ibid.*) On October 23, 1987, the City informed Bell her employment was being terminated for failure to satisfactorily complete her probationary period. (*Ibid.*)

Bell contended she was a permanent employee after the anniversary of her hiring and the City did not have authority to extend her probationary period. (*Bell*, *supra*, 226 Cal.App.3d at p. 193.) The MOU between the City and the employees association contained a provision deducting unpaid leaves of absence of 10 days or more from an employee's "'total service,'" although such leaves would not constitute an interruption of "'continuity of service.'" (*Id.* at p. 194, original capitalization omitted.) The appellate

---

[4] *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194, explains the procedures by which a permanent public employee may be dismissed or otherwise disciplined.

9

court concluded the City properly extended Bell's probationary period and when the City terminated her employment, Bell was still within her probationary period. (*Id*. at p. 195.)

In the present matter, subdivision (a) of Education Code section 88013 states a probationary period is not to exceed one year. The collective bargaining agreement in the present matter, like the MOU in *Bell*, provides that a leave of absence is not considered a break in service. Unlike the MOU in *Bell*, the collective bargaining agreement does not speak to deducting leaves of absence from "'total service.'"[5] The appellate court in *Bell* concluded that "viewing the provisions of the MOU as a whole, and appreciating the purpose of probation, an interruption of a service caused by a leave of absence longer that 10 days requires an extension of the probationary period." (*Bell*, *supra*, 226 Cal.App.3d at p. 193.)

Section 12940, subdivision (m), requires an employer to make a reasonable accommodation for a qualified employee's disability. That section's purpose is to permit an individual with a disability to remain gainfully employed.

Here, the district attempts to use Education Code section 88013, subdivision (a)'s one-year probationary period—a statute enacted to shield employees like Hernandez from serving an indefinite period of time under the "Sword of Damocles"—as a sword against an employee who was away from work on a medical leave for a work injury and unavailable to have her work performance evaluated during that period of time. (See *Wiles v. State Personnel Board* (1942) 19 Cal.2d 344, 347-348 [probationary period provides employer a reasonable period of time to observe employee's job performance before the employee achieves permanent status].) We conclude that when a probationary employee suffers a temporary total disability requiring absence from work for an extended period of time, that period may be deducted from the

---

[5] Total service appears to be basis for advancement within a pay range, the accrual of vacation (*Bell*, *supra*, 226 Cal.App.3d at p. 194), and arguably retirement calculations.

employee's probationary period. In this way, the employer receives the full 12-month period of time in which to evaluate the employee's performance (Ed. Code, § 88013, subd. (a)), and the employee does not lose her job because she suffered a job injury resulting in her temporary total disability (§ 12940, subd. (m)).

Because we conclude the district could have deducted from Hernandez's probationary period the extended period of time she was away from work due to her work-related injury, the district would not have incurred the purported undue hardship (see § 12926, subd. (u)) of having to make her a permanent employee on the anniversary of her hiring without benefit of having had her job performance evaluated. The trial court did not err in concluding the district failed to reasonably accommodate Hernandez's temporary total disability.

2. *Section 12940, Subdivision (n)*

Hernandez's second cause of action was for a violation of section 12940, subdivision (n). The FEHA makes it unlawful "[f]or an employer . . . to fail to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability or known medical condition." (§ 12940, subd. (n).)

"The 'interactive process' required by the FEHA is an informal process with the employee or the employee's representative, to attempt to identify a reasonable accommodation that will enable the employee to perform the job effectively. [Citation.] Ritualized discussions are not required." (*Wilson v. County of Orange*, *supra*, 169 Cal.App.4th at p. 1195.)

Under the circumstances we find in this record, where there is evidence Hernandez was told she could not be fired for taking medical leave and she was thereafter fired when she took the leave, we cannot conclude the interactive process was in good faith. Later, when Hernandez attempted to interact with Chitlik, she was rebuffed. Thus,

11

instead of sitting down with the employee and working out an effective accommodation, the district slammed and locked the door. We agree with the trial court's conclusion the district also violated section 12940, subdivision (n).

III

DISPOSITION

The judgment is affirmed. Hernandez is entitled to her costs on appeal.


MOORE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


ARONSON, J.

12